CASE NO.: CIV-21-561-J

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

CLARISSA COFFEY,
individually and on behalf of all similarly situated persons,

Plaintiff,

v.

O.K. FOODS, INC.,

Defendant.

DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT OF MOTION

KUTAK ROCK, LLP
Leslie B. Stewart (#31788)
Niki Cung (#17853)
Frederick H. Davis (*admitted pro hac vice*)
K. Jon Breyer  (*admitted pro hac vice*)
Aaron A. Myers  (*admitted pro hac vice*)
2403 NW 59th Street
Oklahoma City, OK 73112
Tel: (479) 250-9700

*Attorneys for Defendant O.K. Foods, Inc.*

August 12, 2021

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ALLEGATIONS ................................................................................................ 2

DISCUSSION ................................................................................................... 5

    A.    The Court should dismiss, or in the alternative stay, this action because
Plaintiff's claims are subject to a binding, valid arbitration agreement. .......... 5

        1.    The parties' agreement and legal standard .......................................... 5

        2.    Arbitration is required under the FAA. ................................................ 7

        3.    Any question regarding the existence, scope, or validity of the
arbitration agreement or the arbitrability of Plaintiff's claims
must be determined by the arbitrator. ................................................ 10

    B.    The Court should dismiss this action for lack of Article III legal
standing. ...................................................................................................... 10

        1.    Standard of review .......................................................................... 10

        2.    Requirements of Article III standing ................................................ 11

        3.    Plaintiff's Amended Complaint fails to allege concrete injury. ........ 13

            a.    Alleged increased risk of identity theft .................... 14

            b.    Plaintiff's other alleged damages ............................ 15

            c.    Alleged damages to "Plaintiff and the Class
Members" ................................................................ 18

            d.    Damages alleged within causes of action ................. 20

        4.    Plaintiff fails to trace the alleged injuries to OK Foods. .................. 23

    CONCLUSION ................................................................................................ 26

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Adair Bus Sales, Inc. v. Blue Bird Corp.*,
    25 F.3d 953 (10th Cir. 1994) ...................................................................... 9

*Anders v. Hometown Mortgage Servs., Inc.*,
    346 F.3d 1024 (11th Cir. 2003) .................................................................. 9

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
    No. 19-cv-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ............... 13, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 11, 24

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .............................................................................. 6

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ........................................... 13-14, 17, 19, 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ......................................................... 11

*Buchholz v. Meyer Njus Tanick, PA*,
    946 F.3d 855 (6th Cir. 2020) ................................................................... 22

*Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Oklahoma*,
    636 F.3d 562 (10th Cir. 2010) ................................................................... 9

*Celli v. Shoell*,
    40 F.3d 324 (10th Cir. 1994) ................................................................... 11

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ............................................................................... 7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................. 18

*Columbian Fin. Corp. v. BancInsure, Inc.*,
    650 F.3d 1372 (10th Cir. 2011) ................................................................. 20

*Comanche Indian Tribe of Okla. v. 49, L.L.C.*,
   391 F.3d 1129 (10th Cir. 2004) ................................................................... 6

*Davis v. Federal Election Comm'n*,
   554 U.S. 724 (2008) ................................................................................... 12

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ..................................................................................... 8

*Doe v. Obama*,
   631 F.3d at 161 (4th Cir. 2011) ................................................................. 25

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018) ................................................. 9

*GFF Corp. v. Associated Wholesale Grocers*,
   130 F.3d 1381 (10th Cir. 1997) ................................................................... 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ....................................................................................... 6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ....................................................................................... 9

*Hancock v. Am. Tel. & Tel. Co.*,
   701 F.3d 1248 (10th Cir. 2012) ................................................................ 6-7

*James v. Bobrick Washroom Equip., Inc.*,
   No. CIV-09-145-KEW, 2010 WL 368727 (E.D. Okla. Feb. 1, 2010) ......... 9

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) (per curiam) ................................................................. 8

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ................................................................................. 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 11-12

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ................................................................................... 20

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) ................................................................... 18

*National American Insurance Co. v. SCOR Reinsurance Co.*,
   362 F.3d 1288 (10th Cir. 2004) ................................................................ 6

*Pastian v. Internal Credit Sys., Inc.*,
   No. 3:17-CV-00252, 2020 WL 6445836 (S.D. Ohio Nov. 3, 2020) ......................... 22

*Protocols, LLC v. Leavitt*,
   549 F.3d 1294 (10th Cir. 2008) ................................................................ 12

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011)............................................................ 13-14, 18-19

*Rent-A-Center West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ........................................................................... 7, 10

*Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*,
   157 F.3d 775 (10th Cir. 1998) .................................................................. 7

*Ruiz v. McDonnell*,
   299 F.3d 1173 (10th Cir. 2002) ................................................................ 11

*San Juan Cty., Utah v. United States*,
   503 F.3d 1163 (10th Cir. 2007) (en banc) (abrogated in part on other
   grounds) ...................................................................................... 11

*Spokeo, Inc. v. Robins*,
   578 U.S. 330, 136 S. Ct. 1540 (2016)................................................12-13, 15, 17, 25

*Springmeyer et al. v. Marriott International, Inc.*,
   No. 20-cv-867-PWG, 2021 WL 809894 (D. Md. March 3, 2021) .............11, 13, 23-25

*THI of New Mexico at Hobbs Ctr., LLC v. Patton*,
   741 F.3d 1162 (10th Cir. 2014) ................................................................ 8

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...........................................12-15, 17, 19, 21, 23, 25

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) ...................................................... 13, 15-16, 18-19

*Vandiver Food Stores, Inc. v. Insurance Co. of North America*,
   909 F. Supp. 618 (E.D. Ark. 1995) ............................................................ 22

*Vera v. Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003)................................................................... 9

*Young v. Dish Network, LLC*,
  No. 13-CV-114-JED-PJC, 2015 WL 9459948 (N.D. Okla. Dec. 23,
  2015) ................................................................................................................ 22

## STATE CASES

*City of Dardanelle v. City of Russellville*,
  372 Ark. 486 (2008) ........................................................................................ 8

*Cleveland v. Dyn-A-Mite Pest Control, Inc.*,
  57 P.3d 119 (Okla. Civ. App. 2002) ............................................................ 22

*FMC Corp., Inc. v. Helton*,
  360 Ark. 465 (2005) ...................................................................................... 22

*Jorja Trading, Inc. v. Willis*,
  2020 Ark. 133 .................................................................................................. 8

*Union Nat'l Bank of Little Rock v. Smith*,
  240 Ark. 354 (1996) ........................................................................................ 8

*Worsham v. Nix*,
  145 P.3d 1055 (Okla. 2006) .......................................................................... 22

## FEDERAL STATUTES

Declaratory Judgment Act, 28 U.S.C. § 2201 .................................................... 20

Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 ...................................... 1, 5-9

## STATE STATUTES

15 O.S. § 2 .............................................................................................................. 8

15 O.S. § 11 ............................................................................................................ 8

## OTHER AUTHORITIES

Fed. R. Civ. P. 12 .................................................................................................. 13

Fed. R. Civ. P. 12(b)(1) ................................................................................ 1, 10-11

Fed. R. Civ. P. 15(a) .............................................................................................. 2

Fed. R. Civ. P. 41(a)(1)(A)(i) ............................................................................... 2

U.S. Const. art. III .............................................................. 1-2, 5, 10-11, 13-15, 21-23

# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

CLARISSA COFFEY, individually
and on behalf of all similarly situated
persons,

                 Plaintiff,

v.

O.K. FOODS, INC.,

                 Defendant.

Case No.: CIV-21-561-J

**DEFENDANT'S MOTION
TO DISMISS AND BRIEF
IN SUPPORT OF MOTION**

## INTRODUCTION

This case involves a class action complaint filed by Clarissa Coffey on behalf of herself and all others similarly situated following an alleged data breach of Defendant O.K. Foods, Inc. ("OK Foods") that occurred in April 2020. (ECF No. 16.)  Plaintiff alleges that her personal information, along with that of 3,500 or more current and former employees, was improperly accessed by an unknown third party. Plaintiff brings seven claims under various common law causes of action. OK Foods moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because (1) the parties entered into a valid Arbitration Agreement that is enforceable under the Federal Arbitration Act and requires the claims to be arbitrated; and (2) Plaintiff lacks standing under Article III, as she fails to

articulate a concrete injury and has not properly traced the alleged injuries to any conduct by OK Foods.[1]

## ALLEGATIONS

OK Foods is an Arkansas corporation with numerous hatcheries, farms, feed mills, and processing plants across the country. (ECF No. 16, First Amended Complaint ("Am. Compl.") ¶ 7.) OK Foods' corporate headquarters are located in Fort Smith, Arkansas. (*Id.*) OK Foods is publicly traded and employs around 3,500 employees. (*Id.* ¶ 17.)

Plaintiff Coffey is a resident of Scott County, Arkansas, and was employed by OK Foods in Fort Smith, Arkansas, in or around April 2016. (*Id.* ¶ 11.) As an employee, Coffey provided OK Foods with certain information, such as her name, Social Security number, birthdate, and address. (*Id.* ¶ 1.) As part of Plaintiff's employment at OK Foods, the parties entered into a detailed arbitration agreement and class action and jury trial waiver, broadly agreeing to arbitrate all claims between them (the "Agreement"). (Ex. 1, Second Declaration of Christine Terry and Ex. A.)

---

[1] The Amended Complaint represents the second attempt to establish a proper legal basis for a class action lawsuit against OK Foods in this Court.  The original Complaint, brought on behalf of an Oklahoma plaintiff, Landon Johnson, was met with a motion to dismiss (ECF No. 10) because Mr. Johnson (like Ms. Coffey) had a binding arbitration agreement with OK Foods, and also because Mr. Johnson (like Ms. Coffey) failed to establish Article III standing.  Presumably in response, the Amended Complaint was filed to add Ms. Coffey, an Arkansas resident, as a new plaintiff.  (ECF No. 16.)  This was followed by a "Notice of Voluntary Dismissal" of Mr. Johnson's claims under Fed. R. Civ. P. 41(a)(1)(A)(i) (applying to dismissal of an "action").  (ECF No. 17.)  Effectively, the end result is that Plaintiffs have used their one "free" amended complaint under Rule 15(a) in an attempt to establish subject matter jurisdiction for this class action lawsuit—now with an Arkansas plaintiff positioned against an Arkansas defendant in an Oklahoma federal Court.

Between April 22 and April 30, 2020, an unknown third party gained unauthorized access to an OK Foods employee email address containing employee data, including Coffey's information. (Am. Compl. ¶ 4.) Employee names and Social Security numbers were among the information that might have been accessed. (*Id.*)

On April 15, 2021, following a thorough investigation by cybersecurity professionals, OK Foods sent affected parties a notice stating, among other things, that after an "extensive forensic investigation and manual email review, we determined on March 18, 2021 that the impacted email account, which was accessed between April 22, 2020 and April 30, 2020, contained some of your personal information" (the "Notice"). (*Id.* ¶ 22, Ex. 2.) The Notice specifically identified the personal information as "your full name and Social Security number." (*Id.*) The Notice further advised that "[w]e have no evidence that your information has been misused." (*Id.*)

After OK Foods discovered the unauthorized access, it disabled the login credentials, began an investigation, implemented heightened monitoring, and arranged resources to inform and assist affected employees. Additionally, OK Foods provided a one-year free membership to Experian's® IdentityWorks^SM, at no cost to affected individuals. The product provides identity detection and monitoring, $1 million in identity theft insurance and, if needed, identity theft restoration. (*Id.* Ex. 2.)

For her alleged damages, Plaintiff claims there is a *risk* of future harm *if* her information was exfiltrated and *if* an unauthorized person uses her information to open accounts, access accounts, or impersonate her.  (*Id.* ¶¶ 1, 6, 68-69, 72.)  Plaintiff claims to have received notices of "hard inquiries" into her credit that she did not initiate, and alleges

that such hard inquiries *could* negatively impact her credit score. (*Id.* ¶ 63.) Among other alleged injuries, Plaintiff complains that she "has been forced to spend time dealing with and responding to the direct consequences of the Data Breach, including but not limited to, researching the Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring her accounts with much more frequency than she had done in the past."  (*Id.* ¶ 64.)

Plaintiff contends the incident was avoidable had OK Foods not failed to: (a) properly safeguard Plaintiff's information from unauthorized access, use, and disclosure; (b) implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's information; and (c) protect against foreseeable threats to the security or integrity of such information. (*Id.* ¶ 77.) What is missing are any alleged facts to support these conclusory statements. Plaintiff does not allege any facts about what measures OK Foods did or did not take to protect PII, what alleged inadequacies in its systems existed and that should have been disclosed, what "standard and reasonably available steps" existed that OK Foods did not take, or how OK Foods failed to detect the data breach.

Plaintiff asserts seven claims: (1) negligence; (2) breach of implied contract; (3) breach of confidence; (4) invasion of privacy; (5) breach of fiduciary duty; (6) breach of the covenant of good faith and fair dealing; and (7) declaratory and injunctive relief. All of the claims should be dismissed.

## DISCUSSION

This Court lacks subject matter jurisdiction over the claims because (1) Plaintiff executed a valid Arbitration Agreement that is enforceable under the Federal Arbitration Act and requires the claims to be arbitrated; and (2) Plaintiff lacks Article III standing.

**A.   The Court should dismiss, or in the alternative stay, this action because Plaintiff's claims are subject to a binding, valid arbitration agreement.**

**1.   The parties' agreement and legal standard**

Plaintiff entered into an arbitration agreement with OK Foods in connection with her employment (the "Agreement"). That agreement encompasses the parties' dispute and is subject to the Federal Arbitration Act, and the Court should dismiss the Amended Complaint and compel arbitration:

> This Agreement is entered into between OK Foods, Inc. ("Company") and the undersigned applicant (hereinafter "Individual"). Excluding claims which must, by statute or other law, be resolved in other forums, Company and Individual agree to resolve any and all disputes or claims each may have against the other which relate in any manner whatsoever as to Individual's employment, including but not limited to, all claims beginning from the period of application through cessation of employment at Company and any post-termination claims and all related claims against managers, by binding arbitration pursuant to the National Rules for the Resolution of Employment Disputes ("Rules") of the American Arbitration Association (hereinafter "AAA"). Disputes related to employment include, but are not limited to, claims or charges based upon federal or state statutes, including, but not limited to, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, and any other civil rights statute, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act or other wage statutes, the WARN Act, claims based upon tort or contract laws or common law or any other federal or state or local law affecting employment in any manner whatsoever. In the event that arbitration is brought pursuant to any law or statute which provides for allocation of attorneys' fees and costs, the arbitrator shall have the authority to allocate costs and/or attorneys' fees pursuant to the applicable law or statute.

(Ex. 1, Ex. A p. 1.) And the parties expressly agreed that the Federal Arbitration Agreement ("FAA") applies:

> Company and Individual expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this Agreement, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator.  Likewise procedural questions which arise out of the dispute and bear on its final disposition are matters for the arbitrator to decide.

(*Id.*) The Agreement includes class action and jury trial waivers. (*Id.* at 2.)

The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA's primary purpose is to ensure that arbitration agreements are enforced according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citations omitted). The FAA "manifests a 'liberal federal policy favoring arbitration.'" *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).

On a motion to dismiss and compel arbitration, the inquiry is usually limited to evaluating whether (1) there is a valid agreement to arbitrate; and (2) the dispute falls within the scope of that agreement. *See National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004). The framework for resolving a motion to compel arbitration is similar to summary judgment practice. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). The moving party has the initial burden of showing that the arbitration clause applies to the dispute and, upon meeting that burden, the non-moving party must "rebut that showing with evidence establishing a genuine

dispute as to whether the provisions apply." *Id.* But when an arbitration agreement reserves questions of arbitrability for the arbitrator, the Court does not resolve any issues raised by Plaintiff in opposition to arbitration. *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

The Agreement is properly attached, and the Court may consider it as central to Plaintiff's claims and not subject to reasonable dispute. (*See, e.g.,* Am. Compl. ¶¶ 4-5, 11, 19-23, 61-63, 78, 87, 106, 119, 146, 154, 180); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

### 2. Arbitration is required under the FAA.

The Court should dismiss the case and compel the parties to one-on-one Arbitration.

*First*, the FAA, 9 U.S.C. §§ 1-16, governs the enforcement of the parties' arbitration Agreement. The parties agreed that the FAA "governs the enforceability of any and all of the arbitration provisions of this Agreement . . . ." (Ex. A, p. 2.) OK Foods is an Arkansas corporation with its headquarters located in Fort Smith, Arkansas (Am. Compl. ¶ 7), and Plaintiff is a resident of Scott County, Arkansas, and was employed by OK Foods in Fort Smith. (*Id.* ¶ 11.) Under the FAA, "involving commerce" is the functional equivalent of "affecting commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

*Second*, the arbitration agreement is valid and binding. The FAA provides that written agreements to arbitrate contractual disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion," and agreements to arbitrate that fall within the scope of the FAA must be enforced. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22 (2011) (per curiam). The FAA preempts state law to the extent it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the FAA." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019); *see also THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1165 (10th Cir. 2014) (finding anti-arbitration state law could not serve as barrier for enforcement of arbitration agreement). Here, all essential elements of a contract exist. *See City of Dardanelle v. City of Russellville*, 372 Ark. 486, 491 (2008) (setting forth the essential elements of a contract under Arkansas law: (1) competent parties, (2) competent subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation.) OK Foods is a company empowered to hire employees, and Plaintiff is an adult whom the law presumes is competent to enter into a contract related to her employment. *See Union Nat'l Bank of Little Rock v. Smith*, 240 Ark. 354, 356 (1996).[2] The parties manifested assent through their conduct and signing of the arbitration agreement. (Ex. A ¶ 3.) Consideration for signing the agreement included Plaintiff's employment and OK Foods' agreement to pay for certain arbitration costs. (Ex. A. ¶ 1.) Further, both parties are bound in some way in consideration of the act or promise of the other. *Jorja Trading, Inc. v. Willis*, 2020 Ark.

---

[2] Plaintiff Coffey and OK Foods are both located in Arkansas, but the analysis would not differ under Oklahoma law. *See* 15 O.S. § 2 (elements of a contract); 15 O.S. § 11 (persons authorized to contract).

133, at 3-4. For example, OK Foods also agreed to consider Plaintiff for employment and arbitrate any and all disputes between the parties. (Ex. A ¶ 1.)

*Third*, the parties unambiguously agreed to arbitrate this dispute, which is a dispute or claim "which relate[s] in any manner wheresoever as to [Plaintiff's] employment." *See Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Oklahoma*, 636 F.3d 562, 569 (10th Cir. 2010). Plaintiff's complaint is founded upon her employment and the data breach caused by an unnamed third party that involved information she transferred to OK Foods in its capacity as her employer. (*See, e.g.,* Am. Compl. ¶¶ 4, 5, 11, 19-23, 61-63, 78, 87, 106, 119, 146, 154, 180.) "If the allegations underlying the claims touch matters covered by the parties'  . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *James v. Bobrick Washroom Equip., Inc.*, No. CIV-09-145-KEW, 2010 WL 368727, at *2 (E.D. Okla. Feb. 1, 2010) (citing *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003)). The broad language used in the arbitration clause gives rise to a presumption that the claims should be submitted to arbitration, regardless of whether the legal basis is statutory or contractual. *Id.* (citing *Anders v. Hometown Mortgage Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003)). The parties also agreed to a class action waiver. (Ex. A, p. 2.); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619, 200 L. Ed. 2d 889 (2018).

Under the FAA, a court may compel a case to arbitration and then dismiss it rather than entering a stay pending conclusion of arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86-87 & n.2 (2000); *but see Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994). Since all of Plaintiff's claims are subject to arbitration, the Court should compel arbitration and dismiss this case.

3.      **Any question regarding the existence, scope, or validity of the arbitration agreement or the arbitrability of Plaintiff's claims must be determined by the arbitrator.**

The parties agreed that "[q]uestions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator." (Ex. A, p. 2.) To the extent Plaintiff may argue that the arbitration agreement is unenforceable or that the dispute is not arbitrable, those issues must be referred to the arbitrator, not this Court. *Rent-A-Center West, Inc.*, 561 U.S. at 72.

**B.      The Court should dismiss this action for lack of Article III legal standing.**

The Amended Complaint fails to allege a sufficiently "concrete" injury to obtain legal standing to proceed with this action in federal court. The U.S. Supreme Court has made abundantly clear that the mere assertion of a cause of action in federal court, *without an allegation of concrete injury in fact*, is not sufficient to confer Article III legal standing. Absent a sufficiently pleaded allegation of *concrete* injury—that is, injury that is "real, and not abstract"—there is no legal standing. Moreover, even as to Plaintiff's asserted non-concrete injuries, the Amended Complaint fails to establish how those alleged injuries are fairly traceable to any conduct by OK Foods.  Because Plaintiff (1) fails to allege concrete injury, and (2) fails to establish traceability of any injury to OK Foods, there is no Article III standing and the Court should dismiss this action.

1.      **Standard of review**

OK Foods moves to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of

evidence, the existence of subject matter jurisdiction. *See Celli v. Shoell,* 40 F.3d 324, 327

(10th Cir. 1994); *Springmeyer et al. v. Marriott International, Inc*., No. 20-cv-867-PWG,

2021 WL 809894 (D. Md. March 3, 2021), *2 (noting plaintiff's preponderance burden to

establish standing in data-breach case).   Rule 12(b)(1) motions to dismiss "generally take

one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to

subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter

jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, OK

Foods brings a facial challenge to Plaintiff's Article III standing. In a facial challenge, the

Court must consider the complaint's allegations to be true.  *See Ruiz*, 299 F.3d at 1180.

However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action" or "naked assertions devoid of further factual enhancement"

will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint must contain

enough "facts to state a claim to relief that is plausible on its face" and the factual

allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citations omitted).

## 2.    Requirements of Article III standing

"Article III of the Constitution limits the jurisdiction of federal courts to Cases and

Controversies." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1171 (10th Cir. 2007)

(en banc) (abrogated in part on other grounds). "[A] suit does not present a Case or

Controversy unless the plaintiff satisfies the requirements of Article III standing." *Id*.

As the party seeking to invoke federal jurisdiction, a plaintiff bears the burden of

demonstrating the legal standing to sue in federal court.  *See, e.g*., *Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 561 (1992). A plaintiff must be able to demonstrate standing at all stages of the litigation. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008); *Lujan*, 504 U.S. at 561. Moreover, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

To demonstrate standing, a plaintiff much show (1) that the plaintiff suffered "an injury in fact that is concrete, particularized, and actual or imminent"; (2) that the defendant likely caused the injury; and (3) that judicial relief is likely to provide redress for the injury. *TransUnion LLC*, 141 S. Ct. 2190, 2203 (citing *Lujan*, 504 U.S. at 560-61); *see also Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008). At the pleading stage, a plaintiff must "clearly . . . allege facts demonstrating each of these three elements." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016). This does not change for a class action case. "[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at n.6 (citation, quotations omitted).

In recent years, the Supreme Court has devoted particular attention to the requirement that an alleged harm be sufficiently *concrete* to support legal standing. "No concrete harm, no standing." *TransUnion LLC*, 141 S. Ct. at 2214. Concrete harm requires injury that is "real, and not abstract." *Spokeo,* 136 S. Ct. at 1555-56. The question of whether the alleged injury is sufficiently concrete turns on whether the alleged harm has a "close relationship" to a harm traditionally recognized as giving due rise to a lawsuit, such

as physical injury, monetary harm, or certain intangible harms (e.g., reputational harm). *TransUnion LLC*, 141 S. Ct. at 2200 (citing *Spokeo,* 578 U.S. at 340-41).

The Supreme Court has also emphasized that "under Article III, an injury in law is not an injury in fact." *TransUnion LLC*, 141 S. Ct. at 2205. That is, a plaintiff must establish a concrete injury in fact, "even in the context of a statutory violation." *Spokeo,* 136 S. Ct. at 1549. The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341).

### 3.    Plaintiff's Amended Complaint fails to allege concrete injury.

Where a plaintiff in a data-breach action fails to plausibly establish the requisite elements for Article III legal standing in the complaint, dismissal under Rule 12 is appropriate. *See, e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC,* 986 F.3d 1332 (11th Cir. 2021); *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011); *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017); *Springmeyer et al. v. Marriott International, Inc*., No. 20-cv-867-PWG, 2021 WL 809894 (D. Md. March 3, 2021); *Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-cv-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019).

The Amended Complaint follows suit from the original Complaint in failing to meet the *concrete* injury requirement for Article III legal standing.  Like the original Complaint, the Amended Complaint is heavy on volume but devoid of concrete damages.  Once stripped of its rhetoric (*see, e.g.*, Am. Compl. ¶ 25, suggesting "the information . . . is a virtual goldmine for . . . criminals"), recitations of government statistics and "dark web"

tales (*id.* ¶¶ 26-34), and speculation regarding the hypothetical future activities of unspecified criminal actors (*id.* ¶¶ 35-42), the Amended Complaint has nothing concrete to say about what damages have actually been suffered.

a.    **Alleged increased risk of identity theft**

If there is a consistent allegation of injury across the complaints, that allegation is a risk of future harm, as in "Plaintiffs and the Class are now at much higher risk of identity theft and of cybercrimes of all kinds . . . ." (Am. Compl. ¶ 6.) This theme of increased risk permeates the allegations of injury. (*See, e.g., id.* at ¶¶ 1, 6, 68-69, 72.) But the Supreme Court's recent *TransUnion* ruling, as discussed above, makes clear the mere *risk* that some future injury *might* occur is insufficient to confer Article III standing.

Even before *TransUnion*, several appellate circuits weighing allegations of legal standing in data-breach cases had rejected the theory of legal standing based on the risk of future identity theft. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262, 273–74 (4th Cir. 2017) (affirming dismissal where theory of increased risk was not concrete injury, discussing circuit split on increased-risk theory of standing); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (affirming dismissal for lack of standing, stating "complainant must allege an injury to himself that is 'distinct and palpable,' as distinguished from merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'"). Dismissal was appropriate where a plaintiff had offered "only vague, conclusory allegations" that any personal information had been misused, and where plaintiff's standing argument relied on things like government reports and statistics about

14

identity theft.  *See Tsao v. Captiva MVP Rest. Partners, LLC,* 986 F.3d 1332, 1340, 1340-44 (11th Cir. 2021) (affirming dismissal for lack of standing).

The Supreme Court cemented the analysis with its recent *TransUnion* decision. In *TransUnion*, the Supreme Court rejected an assertion of legal standing based upon certain class members' exposure to the *risk* that inaccurate defamatory credit reports in TransUnion's possession might, one day, be distributed to outside parties.  *TransUnion LLC*, 141 S. Ct. at 2210. The Court emphasized that the mere *risk* of future harm, without more, did not constitute concrete injury and could not confer Article III standing.[3]  The theoretical risk that the credit reports might be disseminated to third parties was "too speculative to support Article III standing."  *Id*. at 2212.  Similarly, here, the speculative risk of identity theft alleged in the Amended Complaint is insufficiently concrete to pass muster under Article III.

## b.  Plaintiff's other alleged damages

The Amended Complaint does not solve the standing defect with allegations of other damages sustained by Plaintiff Coffey.  First, addressing the new allegation for Plaintiff Coffey that was not present for former Plaintiff Johnson, Plaintiff alleges that she "has been notified through the Experian credit bureau of numerous 'hard inquiries' that she did not

---

[3] In so holding, the Court acknowledged the language from *Spokeo* suggesting that "the risk of real harm" might establish standing in certain circumstances, explaining that *Spokeo* had supported this statement with a citation to a suit focused on *injunctive relief*, in which the plaintiff exposed to a risk of future harm sought to enjoin future conduct that would cause the harm.  The *TransUnion* court distinguished an injunctive case from a case seeking retrospective damages, and explained again that any plaintiff must "demonstrate standing separately for each form of relief sought."  *Id*.

initiate," and proceeds to footnote this allegation with a cite to an Experian blog commenting that such inquires *could* impact one's credit rating. (Am. Compl. ¶ 63). If this is intended as an allegation of concrete injury, it fails to qualify. The Amended Complaint does not allege that *Plaintiff* experienced any damage to her credit. For that matter, the Amended Complaint does not allege—at least in anything beyond innuendo—that the alleged hard inquires are connected to the data breach at all.[4] *See Tsao v. Captiva MVP Rest. Partners, LLC,* 986 F.3d at 1343 (affirming dismissal for lack of standing where plaintiff offered "only vague, conclusory allegations" that PII accessed from data breach had been misused).

Otherwise, the alleged damages are: (1) "damages to, and diminution in, the value of her PII – a form of intangible property" (Am. Compl. ¶ 67); and (2) "lost time and opportunity costs, annoyance, interference, and inconvenience as a result of the Data Breach, and … stress and anxiety accompanied by daily increased concerns due to the loss of her privacy and the substantial risk of fraud and identify theft . . ." (*Id.* ¶ 68). Plaintiff also alleges "increased risk arising from the substantially increased risk of fraud, identity theft, and misuse of her PII . . . " (*Id.* ¶ 69), and that she "will, for years to come, be at an imminent risk of financial fraud, identity theft, other forms of cybercrimes, and the attendant damages and will have to pay for credit and identify theft monitoring for the rest of her life" (*Id.* ¶ 72). These alleged injuries are not sufficiently concrete.

_____

[4] The suggestion that Plaintiff Coffey's PII has "already been fraudulently used" (Am. Compl. ¶ 69) presumably relates back to the alleged credit inquiries, but the complaint provides nothing beyond conjecture that the inquiries are tied to OK Foods.

The alleged "diminution" of value to Plaintiff's PII is illogical and not supported by any legal authority of which OK Foods is aware. Plaintiff is not in the business of using her own PII for profit—as if the PII were, say, some exploitable intellectual property like a copyright or a patent. At heart, this allegation is either abstract or merely repetitive of asserting that Plaintiff's PII was accessed by an unauthorized party. That may reflect an alleged legal violation; but this is not a concrete injury. *See, e.g.*, *TransUnion LLC*, 141 S. Ct. at 2205 ("an injury in law is not an injury in fact").

As for lost time, annoyance, inconvenience, and the like, these alleged injuries fundamentally correspond to Plaintiff's speculation of *risk* of future harm through misuse of PII. These types of damages consist of things like "spend[ing] time dealing with and responding to the direct consequences of the Data Breach, including but not limited to, researching the Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring her accounts with much more frequency than she had done in the past." (*Id.* ¶ 64.) These activities are non-concrete as associated with the speculative risk of future criminal activities, as discussed above, or are otherwise "abstract" and not the type of alleged harm traditionally recognized as sufficient to give rise to a federal lawsuit. *See TransUnion LLC*, 141 S. Ct. at 2200; *Spokeo,* 136 S. Ct. at 1555-56.[5]

In fact, several courts have found that data-breach plaintiffs could not manufacture standing with these types of allegations. *See, e.g.*, *Beck v. McDonald*, 848 F.3d at 276 (declining to find "an injury-in-fact because [plaintiffs] have incurred or will in the future

---

[5] Plaintiff also refers to experiencing "anxiety" and "stress" (Am. Compl. ¶ 70), which are discussed below in the context of Plaintiff's negligence claim.

incur the cost of measures to guard against identity theft, including the costs of credit monitoring services"); *Reilly v. Ceridian Corp.,* 664 F.3d at 46 ("[P]rophylactically spen[ding] money to ease fears of [uncertain] future third-party criminality ... is not sufficient to confer standing."); *Tsao v. Captiva MVP Rest. Partners,* 986 F.3d at 1344-45 (finding efforts to mitigate risk – and injuries like lost time, lost rewards points, and loss of access to accounts – did not establish standing). This is consistent with the guidance that "that plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'") *Tsao,* 986 F.3d at 1344 (citing *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 931 (11th Cir. 2020), quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013)).

### c.    Alleged damages to "Plaintiff and the Class Members"

The alleged damages for "Plaintiff and the Class Members" do not improve the standing calculus. The Amended Complaint alleges that "Plaintiff and Class Members have suffered, will suffer, and are at increased risk of suffering" (a) the theft or other unauthorized use of their PII; (b) costs associated with prevention or responding to identity theft or fraud; (c) lost opportunity costs and wages associated with "addressing and attempting to mitigate the actual and future consequences of the Data Breach," such as "researching how to prevent, detect, contest, and recover from identity theft and fraud"; (d) the "continued risk to their PII" which may be subject to "further breaches so long as Defendant fails to undertake appropriate measures to protect the PII in its possession"; and (e) "current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the

remainder of the lives of Plaintiff and Class Members." (Am. Compl. ¶ 82.) These alleged injuries, too, are insufficiently concrete.

The "theft" or "unauthorized use" of PII is an allegation of a crime, not a concrete injury resulting from that crime. The "continued risk" to PII is a forward-looking allegation that falls short of concrete injury as explained under the legal authority discussed above.

The other alleged injuries are largely repetitive, and refer to unspecified "costs" or "wages" associated with the risk of identity theft or other criminal activity that has not happened—i.e., exactly the type of increased-risk damages that the Supreme Court has found insufficiently concrete. *See TransUnion LLC*, 141 S. Ct. at 2210-12. The Amended Complaint provides nothing substantiating any out-of-pocket losses, and any references to costs associated with prevention/mitigation/response activities are vague and insufficiently concrete. *See, e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC,* 986 F.3d at 1344-45 (mitigation efforts and injuries like lost time, lost rewards points, and loss of access to accounts were not concrete); *Beck v. McDonald*, 848 F.3d at 276 (refusing to find standing based on the cost of measures to guard against identity theft); *Reilly v. Ceridian Corp.,* 664 F.3d at 46 (refusing to find standing based on amounts spent out of speculative concern for identity theft). In fact, Plaintiff acknowledges that OK Foods has already offered to pay for credit monitoring and to provide $1 million in insurance. *See* Am. Compl. Ex. 2; *Beck*, 848 F.3d at 276 ("declin[ing] to infer a substantial risk of harm of future identity theft from an organization's offer to provide free credit monitoring services … . To adopt such a presumption would surely discourage organizations from offering these services to data-breach victims, lest their extension of goodwill render them subject to suit.").

### d.       Damages alleged within causes of action

The Amended Complaint also fails to allege sufficiently concrete injury within the causes of action themselves. In the negligence count, the Amended Complaint signposts the overarching standing problem in forecasting that the "injuries and damages" complained of "are a reasonably certain consequence," as opposed to alleging that the injuries have actually happened. (Am. Compl. ¶ 104.) Then, the Amended Complaint explains the forecasted damages as: (1) loss of control over PII, (2) publication or theft of PII, (3) expenses associated with preventing, detecting, or responding to theft of PII, (4) "lost opportunity costs" associated with "addressing and attempting to mitigate … consequences of the Data Breach, including without limitation efforts spent researching," (5) costs associated with "placing freezes on credit reports and password protection", (6) "anxiety, emotional distress, loss of privacy, and other economic and non-economic losses", (7) "continued risk" to PII, and (8) "future costs in terms of time, effort and money" to prevent, detect, or respond to theft of PII. (Am. Compl. ¶ 111.)[6]

---

[6] Plaintiff's other causes of action allege either the same type of injuries or provide fewer allegations of harm than presented in the negligence count. (Am. Compl. ¶¶ 125, 136-37, 158-59, 171.)  There are a couple of exceptions. Plaintiff's claim for "invasion of privacy" mentions the prospect of injunctive relief, but does not specify exactly what type of conduct should be enjoined (*Id.* ¶ 151), apparently leaving this question to Plaintiff's claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.* ¶¶ 174-83.) Plaintiff's declaratory judgment claim is purportedly based on the alleged risk of future data breaches. But Plaintiff never alleges *how* OK Foods failed to act reasonably in the past, or, most pertinent, why there is any immediate risk of a repeat data breach happening and exposing the same employees' information.  "[G]enerally one cannot bring a declaratory judgment action just to resolve one isolated issue in a possible future controversy." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1380 (10th Cir. 2011). Plaintiff has demonstrated no sufficient immediacy or threat, and any request for injunctive or declaratory relief should be dismissed. *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)

What these alleged injuries have in common is that they are either abstract, risk-focused, or effectively alleging an injury in law without any injury in fact. As discussed above, "loss of control" or "theft" of PII alleges an injury in law rather than a concrete injury in fact. The same goes for "loss of privacy," which is tantamount to asserting that PII was accessed by a third party but does not substantiate any concrete injury beyond the act itself. Likewise, the alleged "continued risk" is insufficient as explained above.

Plaintiff also alleges "anxiety" or "stress" over the prospect of identity theft. (Am. Compl. ¶¶ 68, 70.) Within the causes of action, it is only Plaintiff's negligence count that alleges damages for "anxiety" and "emotional distress." (*Id.* ¶ 111.) The *TransUnion* court declined to address whether current "emotional or psychological harm" could form the basis for Article III standing, likening the possibility to the type of emotional distress sometimes allowed as damages in tort litigation. *See TransUnion LLC*, 141 S. Ct. at 2211 n.7. Here, Plaintiff has referred to stress, anxiety or distress only in the most abstract terms, alleging no details of concrete "emotional or psychological harm" and having established no basis for believing that any class members have sustained such harm. *See, e.g.*, *Beck* v. *McDonald*, 848 F.3d at 272 ("We also reject the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are

---

(requiring "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *Beck v. McDonald*, 848 F.3d at 277–78 (injunctive relief not warranted despite plaintiffs being victims of two previous data breaches without showing of "real" or "immediate" threat of future breach).

'adverse effects' sufficient to confer Article III standing.") Further, the restrictions on seeking such damages in negligence foreclose legal standing.[7]

As to the several mentions of unspecified "expenses," "costs," and the like, these refer to the speculative risk of amounts that *could be* incurred in connection with identity theft that *has not happened*. As explained above, even if the Amended Complaint is trying to imply that amounts were voluntarily expended out of concern for this risk, such alleged injuries have been recognized as insufficient to convey legal standing. As made clear above, none of these constitute concrete injury sufficient for legal standing.

The most fundamental takeaway from both the original Complaint and the Amended Complaint is this: OK Foods was the target of a criminal hack by an unknown third party, and there is a strong desire to use this event to instigate a class action lawsuit, even as

---

[7] Under Arkansas law, mere emotional distress or mental anguish is an insufficient basis for recovery for negligence. *FMC Corp., Inc. v. Helton*, 360 Ark. 465 (2005); *Vandiver Food Stores, Inc. v. Insurance Co. of North America*, 909 F. Supp. 618 (E.D. Ark. 1995) (finding failure to properly issue insurance policy resulted in only mental distress, and therefore negligence claim was dismissed). Likewise, Oklahoma law requires physical suffering to support a claim for negligence. *Young v. Dish Network, LLC*, No. 13-CV-114-JED-PJC, 2015 WL 9459948, at *2–3 (N.D. Okla. Dec. 23, 2015) (noting that physical suffering is a necessary condition for a negligence claim); *Worsham v. Nix*, 145 P.3d 1055, 1071-72 (Okla. 2006); *Cleveland v. Dyn-A-Mite Pest Control, Inc.*, 57 P.3d 119, 131 (Okla. Civ. App. 2002) (stating that "emotional distress as a consequence of an intentional tort is distinguishable from distress resulting from breach of contract or negligence, which requires a showing of physical injury." (alteration omitted)). Other federal courts have recognized that anxiety and emotional distress are not a cognizable injury sufficient to support a claim of negligence. *See, e.g., Pastian v. Internal Credit Sys., Inc.*, No. 3:17-CV-00252, 2020 WL 6445836, at *5-10 (S.D. Ohio Nov. 3, 2020); *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 863 (6th Cir. 2020) (affirming dismissal of case for lack of standing, reasoning in part that the court was skeptical that plaintiff's allegations of anxiety amounted to a cognizable injury and that the allegations supported only fear of future harm.)

multiple complaints have now failed to establish concrete injury supporting this action. But federal courts are not a "roving commission" to opine on legal issues untethered to actual, *concrete* injury. *TransUnion LLC*, 141 S. Ct. at 2203. The Amended Complaint, like the Complaint before it, fails to allege concrete injury to satisfy Article III.

### 4. Plaintiff fails to trace the alleged injuries to OK Foods.

In a data-breach case involving the unauthorized access of information by an outside party, "[t]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Springmeyer et al. v. Marriott International, Inc*., No. 20-cv-867-PWG, 2021 WL 809894, *2 (D. Md. March 3, 2021) (internal citation and quotations omitted). Beyond its failure to establish concrete injury, the Amended Complaint fails to establish standing because it fails to show that the asserted injuries are fairly traceable to OK Foods.

Although Plaintiff alleges that her PII was "exposed to unauthorized third parties" due to OK Foods' alleged "failure to provide reasonable and adequate data security," (Am. Compl. ¶ 6), Plaintiff never alleges *how* OK Foods failed to act reasonably. To the contrary, Plaintiff acknowledges that the data breach was the result of OK Foods' system being accessed by "an unknown third party." (*Id.* ¶¶ 19-20.) Plaintiff discusses various Federal Trade Commission guidance regarding best data practices and FTC enforcement practice, but does not allege that OK Foods did not abide by those best practices. (*Id.* ¶¶ 43-46.) Plaintiff alleges only in summary terms that OK Foods failed to act reasonably "[b]y negligently securing Plaintiffs' and Class Members' PII and allowing an unknown third-

party cybercriminal to access an OK Foods employee's email account in order to access unencrypted employee PII." (*Id*. ¶ 47.) However, the Amended Complaint does not identify *how* OK Foods was negligent.

Plaintiff offers nothing more than circular and conclusory allegations of fault, with Plaintiff effectively presuming OK Foods' negligence based upon nothing more than OK Foods having been criminally hacked. Plaintiff never establishes *how* OK Foods failed to act.  Plaintiff alleges failure by OK Foods only in general terms (e.g., failure to "safeguard" information or deploy adequate "security"). (*See, e.g.,* Am. Compl. ¶¶ 77-79, 106-09, 121-24.) Plaintiff alleges "failing to implement the necessary systems, policies, employee training and procedures necessary to prevent the Data Breach" but does not specify what systems, policies, training, or procedures were omitted.  (*Id*. ¶ 101.)  Plaintiff's allegations effectively suggest nothing more than OK Foods *must have failed* to implement data security measures because OK Foods' systems were infiltrated.  The Amended Complaint is long on assumed fault but short on any explanation.

Plaintiff's allegations here are remarkably similar to the allegations in a recently dismissed data-breach class action filed against the Marriott hotel chain. There, the plaintiffs alleged "Marriott's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect its guests' PII." *Springmeyer*, 2021 WL 809894, at *3. In dismissing the case for lack of legal standing, the Maryland federal court found that these and similar allegations were "conclusory and not entitled to be assumed true." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. at 681). The *Springmeyer* court noted how the complaint "fail[ed] to allege any facts describing Marriott's cybersecurity or steps that it

could have or should have taken to prevent this data breach. To be sure, Plaintiffs repeat their conclusory allegations that Marriott's cybersecurity was unreasonable throughout the Complaint in connection with their eleven causes of action." *Id*. The court continued:

> [M]ere repetition of conclusory and nonspecific allegations of Marriott's alleged shortcomings does not overcome the need to plead sufficient facts relating to what it did or did not do that led to the injuries claimed by the Plaintiffs. What is missing are any alleged facts to support these conclusory statements. For example, Plaintiffs do not allege any facts about what measures Marriott did or did not take to protect PII, what alleged inadequacies in its systems it should have disclosed, what 'standard and reasonably available steps' existed that Marriott did not take, how Marriott failed to detect the data breach, or why it did not provide timely and accurate notice of the breach. Thus, Plaintiffs fail to 'clearly ... allege facts demonstrating' their alleged injuries are fairly traceable to Defendant's conduct, *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547, "and not injury that results from the independent action of some third party not before the court." *Doe v. Obama*, 631 F.3d at 161.

*Id*.; *see also Anderson v. Kimpton Hotel & Rest. Grp.,* No. 19-cv-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) (dismissing data-breach class action for lack of standing where Plaintiffs pleaded "inadequate security," "safeguards" and other allegations, but the complaint was "devoid of facts" and "[did] not allege the nature of . . . reasonable, appropriate, obligatory, sufficient and/or adequate action Kimpton failed to take").[8]

In appraising Plaintiff's conclusory allegations against OK Foods, one could appropriate the *Springmeyer* court's analysis almost verbatim. The Amended Complaint relies on conclusory allegations without plausibly alleging facts suggesting that any alleged

---

[8] *Kimpton's* discussion on increased risk as a basis for standing would be inconsistent with other decisions cited herein, and would be transcended by the *TransUnion* decision.

injuries are attributable to OK Foods. Accordingly, Plaintiff's complaint should be dismissed based upon a lack of legal standing.

## CONCLUSION

For the reasons stated above, Defendant OK Foods respectfully requests that the Court enter an order compelling the Plaintiff to submit her claims in arbitration and dismiss this litigation, or in the alternative dismiss this case for lack of standing, and grant all other relief to which Defendant is entitled.

Respectfully submitted,

**KUTAK ROCK, LLP**

*/s/ Niki Cung*

Niki Cung (#17853)
234 East Millsap Road, Suite 200
Fayetteville, AR 72703
Tel: (479) 973-4200
niki.cung@kutakrock.com

Leslie B. Stewart (#31788)
2403 NW 59th Street
Oklahoma City, OK 73112
Tel: (479) 250-9700
leslie.stewart@kutakrock.com

Frederick H. Davis (AR Bar No. #2012271)
*Admitted Pro Hac Vice*
124 West Capitol Avenue, Suite 2000
Little Rock, AR 72201-3706
Tel: (501) 975-3000
frederick.davis@kutakrock.com

K. Jon Breyer (MN Bar No. #302259)
*Admitted Pro Hac Vice*
Aaron A. Myers (MN Bar No. #0311959)
*Admitted Pro Hac Vice*
60 South Sixth Street
Suite 3400
Minneapolis, MN 55402
Tel: (612) 334-5000
jon.breyer@kutakrock.com
aaron.myers@kutakrock.com

*Attorneys for Defendant O.K. Foods, Inc.*